**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **SAMOTTA WIGGINS**, | § § § | **Case No.** _____ |
| Plaintiff, | § § | |
| v. | § § | |
| **TEXAS DEPARTMENT OF FAMILY AND** | § § | |
| **PROTECTIVE SERVICES,** | § § | |
| **AND DOES 1-25 INCLUSIVE**, | § | |
| Defendants. | | |

---

**PLAINTIFF'S ORIGINAL PETITION**

---

## I.    INTRODUCTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW SAMOTTA WIGGINS ("Plaintiff') files this Original Petition against TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES and Does 1 to 25 ("Defendants") and would respectfully show the Court as follows.

## II.    DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3.

## III.    PARTIES

2. Plaintiff SAMOTTA WIGGINS is an individual and a resident of Tarrant County, Texas. At all times relevant to this lawsuit, Plaintiff was employed by the Texas Department of Family and Protective Services ("DFPS") as a dedicated and high-performing Caseworker. Plaintiff worked primarily out of the DFPS office serving ELLIS County and surrounding areas, and carried out her duties in accordance with agency policy and applicable federal and state law.

3. Defendant TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES is a state agency operating under the authority of the State of Texas. At all times relevant to this action, Defendant employed Plaintiff and was responsible for supervising, managing, evaluating, and ultimately terminating her employment. Defendant may be served with process through its Executive Commissioner or General Counsel at 208 YMCA Dr. Waxahachie, Texas 75165. Service of citation is respectfully requested at this time.

4. Plaintiff does not presently know the true names and capacities of any other individuals or entities who may have participated in, directed, authorized, or ratified the unlawful conduct alleged herein, and therefore reserves the right to amend this Petition to name additional defendants as discovery progresses and their identities become known.

5. For purposes of this Petition, the term "Defendant" shall refer to the Texas Department of Family and Protective Services and any other individuals or entities acting under its authority or control who may later be named in this action.

### IV.    JURISDICTION AND VENUE

6. Plaintiff seeks monetary relief in an amount over $250,000 but not more than $1,000,000, as provided by Texas Rule of Civil Procedure 47(c). The damages sought are within the jurisdictional limits of this Court.

7. This Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds the minimum jurisdictional threshold of the Court.

8. This Court has personal jurisdiction over Defendant, the Department of Family and Protective Services of Texas ("DFPS"), a state agency headquartered and operating within the State of Texas. At all relevant times, Defendant employed Plaintiff within the State of Texas and purposefully availed itself of the privileges and protections of Texas law by conducting substantial and continuous governmental operations throughout the state, including in Travis County, Texas, where Plaintiff was employed.

2

9. Venue is proper and mandatory in Travis County, Texas, pursuant to Texas Civil Practice and Remedies Code § 15.002(a)(1), because all or a substantial part of the events or omissions giving rise to these claims occurred in Travis County. This includes, but is not limited to, Plaintiff's employment, the discriminatory and retaliatory actions taken by Defendant, and Plaintiff's wrongful termination.

## V.    BACKGROUND FACTS

### A. Overview of Employment and Strong Performance

10. Plaintiff Samotta Wiggins, an African-American Woman, began her career with the Texas Department of Family and Protective Services (DFPS) in April 2016. She rose through the ranks from Caseworker I to Caseworker IV, ultimately earning an annual salary of $63,000 by the time of her termination in August 2023. Over a span of seven years, Plaintiff built a consistent record of acceptable and favorable performance reviews, a reputation for ethical conduct, and a portfolio of difficult, complex cases successfully handled.

11. Despite her proven qualifications and dedication to protecting children and families, Plaintiff was targeted for removal and harassment after asserting her legal rights, reporting internal violations, and refusing to participate in unlawful acts. Her exemplary performance did not deteriorate; rather, DFPS's treatment of her deteriorated after she became involved in protected activity.

### B. Protected Medical Leave and Discriminatory Response

12. In July 2022, Plaintiff experienced a serious medical condition, for which she applied and was approved for FMLA leave through October 2022. Upon returning, she was placed on intermittent FMLA status with appropriate documentation. DFPS, however, began to question, monitor, and obstruct her use of intermittent leave, treating her protected leave as a burden and pretext for adverse action.

3

13. Plaintiff's request for reasonable accommodations under the ADA were made both verbally and by email to her supervisor between October 2022 and February 2023. These included requests related to medical follow-up appointments and scheduling adjustments. Yet DFPS failed to engage in the interactive process, did not document any undue hardship, and completely disregarded the accommodation request—constituting a clear violation of Texas Labor Code § 21.128.

14. Simultaneously, Plaintiff's holiday pay and overtime were withheld without explanation or justification. She later recovered a small portion of these wages only after intervention from the U.S. Department of Labor in September 2024—further confirming unlawful conduct by DFPS in its wage practices. This wage suppression coincided with her medical status and further evidences retaliation.

## C. Discriminatory Targeting and Fabricated Discipline

15. In February 2023, Plaintiff was assigned a courtesy case originating from another county. She was not the primary caseworker, but **was instructed to document** that she had observed a child who was not present—an act she refused as **unethical and potentially criminal falsification of government records**. Her refusal to commit this illegal act is protected conduct under Texas public policy and the Sabine Pilot exception to at-will employment.

16. In direct retaliation for refusing to falsify documentation, DFPS issued Plaintiff a **false disciplinary write-up in April 2023**. Notably, she had received **only one prior write-up in 2020**, which was successfully disputed and not performance-based. The April 2023 write-up was fabricated and related solely to a case in which she was a **secondary worker**, not responsible for the alleged deficiencies.  And was only done purely in retaliation for her refusal to commit an illegal act.

4

17. Plaintiff immediately reported the retaliatory and discriminatory conduct to HR and the HHSC Civil Rights Division, thus engaging in further protected activity under TCHRA § 21.055. Following this, DFPS retaliated again by removing her caseload, denying her the required monthly performance conferences, altering her time sheets, and surveilling her movements.

## D. Racial, Color-Based, Sex-Based, and Age-Based Disparities

18. After her longtime supervisor took leave in June 2023, Plaintiff was reassigned solely to the supervision of Megan Pick, a white female supervisor. All other caseworkers were reassigned to minority supervisors. This isolation was intentional and discriminatory. Under Ms. Pick's authority, Plaintiff was the only caseworker denied monthly performance conferences, which are required under DFPS policy.

19. Plaintiff, a dark-skinned Black woman over 40, was the only team member with all three protected characteristics: race, color, and age. Her team consisted mostly of younger, white, or non-disabled individuals who were not subjected to similar scrutiny or micromanagement.

20. Plaintiff was required to complete late-night field visits and manage excessively high caseloads, while white or younger coworkers were not required to perform similar tasks or were reassigned for lesser concerns. Plaintiff's work product was subjected to arbitrary criticism, whereas younger, white employees with poorer performance were not reprimanded. This is disparate treatment under Texas Labor Code § 21.051 and supports causes for race, color, sex, and age discrimination.

21. Supervisor Randy Melton—described by Plaintiff as having a documented and well-known pattern of bias—played a role in disciplinary decisions involving multiple Black employees,

including the termination of both a Black female and a Black male supervisor in the same county. Mr. Melton also made inappropriate comments referencing age, telling Plaintiff she was "not getting any younger," and comparing her to his own age.

## E. Union Activity and Retaliation

22. In June 2023, Plaintiff joined a union for employee protections. Just two months later, on August 23, 2023, she was terminated. Although she began paying dues in October 2023, her membership and union activity began prior to termination, providing further motive for retaliation.

## F. Procedurally Defective and Retaliatory Termination

23. On or about August 17, 2023, Plaintiff was issued a Disciplinary Action Notice (DAN) which referenced the false write-up from April 2023. Despite policy, her access to internal DFPS systems was revoked before she could respond. Plaintiff submitted her rebuttal to the DAN in a timely manner and copied relevant oversight officials.

24. Nevertheless, she was issued a termination letter on August 23, 2023, signed by Kimberly Carter, who falsely claimed that Plaintiff had not responded to the DAN. This was categorically false and easily disproved by timestamped emails. DFPS's decision to terminate was retaliatory, factually unsupported, and procedurally invalid.

## G. Emotional, Financial, and Reputational Harm

25. Plaintiff has since endured **profound emotional distress, reputational harm**, and **loss of employment prospects**, despite nearing completion of her **master's degree** and having an otherwise unblemished record. The hostile, unlawful termination has derailed her career, and caused severe psychological harm, including anxiety, insomnia, and loss of self-worth.

**H. Administrative Exhaustion**

26. Plaintiff timely filed a Charge of Discrimination with the EEOC on or around February 11, 2024. The Charge was docketed in May 2024. She received her Notice of Right to Sue on January 27, 2025, and now brings this action in full compliance with the Texas Labor Code, Title VII, the ADA, ADEA, and FMLA.

## VI.    CONDITIONS PRECEDENT

1. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and this Charge was dual filed with the Texas Workforce Commission pursuant to those agencies' work sharing agreement.

2. A Right to Sue has been issued on the Charge.

3. Plaintiff has timely exhausted all of his administrative remedies.

## VII.    CAUSES OF ACTION

**Count 1– Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

27. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

28. Defendant Texas Department of Family and Protective Services (DFPS) violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq., and the Texas Labor Code § 21.051, by subjecting Plaintiff, an African American woman, to discrimination on the basis of race with respect to the terms, conditions, and privileges of her employment.

29. Plaintiff Samotta Wiggins was a highly accomplished and respected employee who rose through the ranks from Caseworker I to Caseworker IV over the course of seven years. She consistently received positive annual evaluations and was known for her strong work ethic and commitment to child welfare. Despite her exemplary performance, she was treated less favorably than similarly situated non-minority coworkers.

30. Unlike her white and younger colleagues, Plaintiff was denied basic workplace protections and support. She was excluded from mandatory monthly performance conferences for three consecutive months—a violation of DFPS policy—and subjected to increased scrutiny, surveillance, and micromanagement. Her workload was manipulated, her timesheets altered without her consent, and she was forced to conduct after-hours field visits far beyond her scheduled shift. In contrast, white coworkers who failed to complete assignments or made substantial errors were not disciplined or scrutinized in the same way.

31. Plaintiff was also forced to continue managing a case involving a client who called her the N-word, while white employees were reassigned from far less egregious circumstances. This disparate treatment was not only degrading and humiliating, but it created a working environment that was fundamentally unequal.

32. Further, key decisionmakers, including Supervisor Randy Melton, demonstrated a pattern of implicit and explicit racial bias. Melton expressed conservative political views and made comments indicating racial and age-based prejudice. Plaintiff also directly overheard a minority colleague describe Melton as racist early in her employment. Melton played a role in the termination or discipline of multiple minority employees in the region, further reinforcing a pattern of racial disparity.

33. The treatment Plaintiff endured constitutes intentional disparate treatment in violation of Title VII, which prohibits employers from discriminating against employees based on race in any aspect of employment, including discipline and termination. As established in *Garcia v. Shell Oil Co.*, 355 S.W.3d 768, and *Fenley v. Baird's Bakeries*, 59 S.W.3d 314, racial discrimination can be inferred from a pattern of adverse actions taken against an employee who is treated differently than her peers under similar circumstances, particularly when racial animus can be reasonably inferred from context.

34. Defendant's actions also violated the Texas Commission on Human Rights Act (TCHRA), which mirrors and is interpreted consistently with Title VII. See *Tarrant Cty. Coll. Dist. v. Sims*, 621 S.W.3d 323. The cumulative effect of Defendant's conduct created unequal working conditions, hindered Plaintiff's professional advancement, and ultimately led to her wrongful and pretextual termination.

35. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, reputational harm, emotional distress, and other damages for which she now seeks redress.

**Count 2 – Age Discrimination in Violation of the Age Discrimination in Employment Act (ADEA)**

36. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

37. At all relevant times, Plaintiff Samotta Wiggins was over the age of 40 and therefore a member of the class of individuals protected by the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code § 21.051 et seq. Defendant Texas Department of Family and Protective Services (DFPS) is an employer subject to both the ADEA and TCHRA, as it employs more than 20 individuals.

38. Plaintiff was clearly qualified for her position as a Caseworker IV and had performed her duties with distinction over a span of more than seven years. Despite her qualifications, she was subjected to disparate and unfavorable treatment based on her age. At the time of her termination, Plaintiff was the oldest member of her team. Most of her colleagues were significantly younger, and none of them were similarly subjected to the increased scrutiny, micromanagement, and procedural neglect she experienced.

39. Supervisors made repeated age-related comments to Plaintiff, including statements such as "you're as old as I am" and "you're not getting any younger." These comments were made contemporaneously with the escalating hostility, assignment manipulation, and eventually her termination. Under applicable precedent, including *Tex. Tech Univ. Health Scis. Center-El Paso v. Flores*, 612 S.W.3d 299, age-related remarks may support an inference of discriminatory motive when made close in time to the adverse action by a decisionmaker.

40. Plaintiff was denied access to mandatory performance evaluations, assigned disproportionate workloads, subjected to policy violations that were not applied to her younger colleagues, and ultimately terminated based on pretextual grounds. Significantly younger employees, including those with documented performance issues or who failed to complete tasks, were not disciplined or terminated, while Plaintiff was scapegoated and dismissed under false pretenses.

41. Defendant's conduct constitutes unlawful age discrimination under both the ADEA and the TCHRA. Under the TCHRA, a violation occurs if age was a motivating factor in the adverse employment action, even if other reasons were also cited. See *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629. The disparate treatment Plaintiff experienced, combined with the age-related comments and the favorable treatment of younger employees, establish that her age was at least a motivating factor in Defendant's decision to terminate her.

42. As a direct and proximate result of Defendant's age-based discrimination, Plaintiff has suffered substantial damages, including but not limited to lost wages and benefits, emotional distress, reputational harm, and loss of future employment opportunities.

**Count 3 – Disability Discrimination in Violation of the Americans with Disabilities Act (ADA)**

43. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein. At all times relevant, Plaintiff Samotta Wiggins was a qualified individual with

a disability as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code § 21.001 et seq. Plaintiff suffered from a medical condition that substantially limited one or more major life activities, and of which Defendant was fully aware. Despite this, Defendant Texas Department of Family and Protective Services (DFPS) failed to fulfill its statutory obligations under federal and state law.

44. Upon returning from an approved FMLA leave in October 2022, Plaintiff informed her supervisor of her ongoing medical condition and actively sought a reasonable accommodation, both in writing and verbally, as early as November 2022 and again in February 2023. Her requests were clear and made in good faith, consistent with her rights under Sec. 21.128 of the Texas Labor Code and the ADA's requirement that employers accommodate qualified employees unless doing so would cause undue hardship.

45. Rather than engage in an interactive process or respond meaningfully to Plaintiff's requests, DFPS entirely ignored her accommodation efforts. This failure to engage in good faith violates both the ADA and the TCHRA, which require employers to provide reasonable accommodations to known physical or mental limitations. See *Tex. DOT v. Lara*, 625 S.W.3d 46.

46. Instead of receiving support or flexibility, Plaintiff was subjected to increased burdens and scrutiny. She was denied the same scheduling considerations offered to others, pressured to accept shifts she could not reasonably complete due to her condition, and forced to work excessively long hours without regard for her health limitations. Her work environment was not modified to account for her needs—on the contrary, her conditions worsened after making the request, further demonstrating Defendant's discriminatory intent.

47. Ultimately, the adverse employment actions, including the malicious write-up in April 2023 and her termination in August 2023, were taken in close temporal proximity to her requests

11

for accommodation and protected medical leave. This pattern of conduct demonstrates that Plaintiff was discriminated against because of her disability and her efforts to seek accommodation—conduct that is squarely prohibited by § 203A.33 of the ADA and *Tex. Tech Univ. Health Scis. Ctr. - El Paso v. Niehay*, 671 S.W.3d 929.

48. As a direct and proximate result of Defendant's unlawful failure to accommodate and discriminatory termination, Plaintiff has suffered loss of income, employment benefits, emotional distress, reputational damage, and ongoing difficulties in securing comparable employment.

**COUNT 4 – Discrimination and Retaliation in Violation of the Texas Commission on Human Rights Act (TCHRA)**

49. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

50. Defendant Texas Department of Family and Protective Services (DFPS) engaged in unlawful employment practices in violation of the Texas Commission on Human Rights Act (TCHRA), codified in Texas Labor Code Chapter 21, by discriminating against Plaintiff on the basis of her race, age, and disability, and by retaliating against her for engaging in protected activities.

51. Pursuant to Texas Labor Code § 21.051, an employer commits an unlawful employment practice if it discharges or otherwise discriminates against an employee with respect to compensation or the terms, conditions, or privileges of employment because of that individual's race, color, disability, sex, national origin, or age. The statute further prohibits limiting, segregating, or classifying employees in a manner that adversely affects their status or employment opportunities based on these protected characteristics.

52. Plaintiff Samotta Wiggins was an experienced, high-performing African American woman over the age of 40 and with a qualifying disability under the law. She was employed by

Defendant for over seven years, rose through the ranks to Caseworker IV, and consistently received favorable performance reviews. Despite this, she was targeted for increased surveillance, exclusion from required monthly performance conferences, and unreasonable workloads—all while being denied accommodations for her disability and subjected to disparate treatment compared to her younger, non-minority coworkers.

53. Beginning in 2022, after returning from FMLA leave and requesting a reasonable accommodation for her medical condition, Plaintiff became the target of sustained hostility and adverse treatment. Her supervisor ignored her formal and verbal requests for accommodation, manipulated her assignments and timesheets, and subjected her to scrutiny far exceeding what was expected of similarly situated employees. These acts violated § 21.128, which requires good faith efforts to accommodate qualified individuals with disabilities unless such accommodations pose an undue hardship—none of which was demonstrated by DFPS.

54. The discriminatory conduct continued under the supervision of Megan Pick, who deliberately denied Plaintiff equal access to workplace processes and oversight. Unlike her peers, Plaintiff was not provided with the mandatory monthly performance conferences required by DFPS policy. Instead, she was falsely accused of misconduct and issued pretextual disciplinary actions that culminated in her termination in August 2023.

55. Moreover, Defendant unlawfully retaliated against Plaintiff in violation of Texas Labor Code § 21.055, which prohibits retaliation against individuals who file complaints or oppose discriminatory practices. After reporting ethical violations and discriminatory treatment to Human Resources and the HHSC Civil Rights Office, Plaintiff was stripped of her caseload, denied system access, and terminated shortly after responding to a Disciplinary Action Notice. The proximity in time and sequence of events strongly supports the inference that her

13

protected activity was a motivating factor in Defendant's decision to terminate her employment.

56. Plaintiff timely exhausted her administrative remedies under the TCHRA by filing a complaint with the EEOC and receiving a Right to Sue letter dated January 27, 2025. See *City of El Paso v. Marquez*, 380 S.W.3d 335.

**57.** As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct under the TCHRA, Plaintiff suffered damages including lost wages, loss of benefits, diminished future earnings capacity, mental anguish, emotional distress, and reputational harm, for which she now seeks all remedies available under Texas law.

**COUNT 5 – Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

58. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

59. Defendant Texas Department of Family and Protective Services (DFPS) unlawfully retaliated against Plaintiff Samotta Wiggins in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-3(a), and its state-law counterpart, the Texas Commission on Human Rights Act (TCHRA), codified at Texas Labor Code § 21.055. These laws prohibit employers from retaliating against employees who engage in protected activity, such as opposing discriminatory practices, participating in internal investigations, or filing complaints with enforcement agencies. Texas courts routinely interpret TCHRA retaliation claims consistently with federal law, including the broader standards clarified by the U.S. Supreme Court, which define retaliation as any employer action that would dissuade a reasonable employee from asserting their rights.

60. Plaintiff engaged in multiple forms of protected activity during her employment. She submitted formal and verbal requests for reasonable accommodation under the ADA, reported unethical and discriminatory conduct internally to Human Resources and to the Civil Rights Division of

14

the Texas Health and Human Services Commission (HHSC), and opposed directives that would have required her to falsify documentation in violation of law and agency ethics. Following these protected actions, Defendant subjected Plaintiff to a pattern of escalating retaliatory conduct that ultimately culminated in her wrongful termination. This pattern included the abrupt removal of her caseload, the manipulation of her timesheets, exclusion from monthly performance conferences, heightened surveillance, and false disciplinary write-ups intended to create a paper trail to justify termination.

61. The causal link between Plaintiff's protected conduct and the adverse employment actions she endured is both direct and compelling. These retaliatory acts began within weeks of her formal complaint to HR and continued through the date of her termination in August 2023. The proximity in time between her protected activity and the adverse employment decisions, along with the severity and persistence of Defendant's retaliatory conduct, strongly supports the inference that her termination was not motivated by performance concerns, but rather by her lawful efforts to assert her civil rights. Texas courts, following *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, and *Tex. A&M Univ. v. Starks*, 500 S.W.3d 560, recognize that such temporal proximity and retaliatory escalation satisfy the causation requirement under both Title VII and the TCHRA.

62. The retaliation Plaintiff endured went far beyond the standard disciplinary framework and reflected deliberate, targeted efforts to isolate and punish her for speaking out. The removal of her access to the state's internal systems immediately after issuing a disciplinary notice—and before allowing her a meaningful opportunity to respond—demonstrates a level of retaliation that was not only excessive but designed to silence her and remove her from the workplace under false pretenses.

63. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered significant harm, including loss of income and employment benefits, emotional distress,

damage to her professional reputation, and a substantial impairment of her future earning capacity. Pursuant to Title VII and the TCHRA, Plaintiff seeks all available remedies, including compensatory damages, back pay, front pay, punitive damages, and attorney's fees, in order to hold Defendant accountable and deter similar conduct in the future.

**COUNT 6 – Retaliation in Violation of the Americans with Disabilities Act (ADA)**

64. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein. Plaintiff incorporates by reference all preceding paragraphs of this Petition.

65. Defendant Texas Department of Family and Protective Services (DFPS) unlawfully retaliated against Plaintiff Samotta Wiggins in violation of 42 U.S.C. § 12203 of the Americans with Disabilities Act (ADA) and Texas Labor Code § 21.055, a provision of the Texas Commission on Human Rights Act (TCHRA). These statutes prohibit employers from retaliating against individuals who oppose or report acts made unlawful under the ADA, request reasonable accommodations, or otherwise participate in protected activities related to disability rights enforcement.

66. Plaintiff was a qualified individual with a disability who, beginning in late 2022 and continuing through 2023, engaged in a series of protected activities under the ADA. She submitted written and verbal requests for reasonable accommodation for a medical condition that substantially limited one or more major life activities. Although these requests were made through proper channels and followed internal protocols, Defendant failed to respond in good faith or engage in the interactive process required under federal law. Plaintiff also reported what she believed to be discriminatory and unethical conduct related to disability accommodations to Human Resources and to the HHSC Civil Rights Division. Shortly thereafter, she began experiencing severe and escalating retaliation, which included the removal of her caseload, the exclusion from performance evaluations, manipulation of timesheets, targeted surveillance, and a pretextual write-up that would eventually be used to justify her termination.

67. The ADA's retaliation protections, as set forth in § 12203, do not require that an employee prove the underlying discrimination was successful or even valid—only that the employee had a good faith belief that her rights under the ADA were being violated and that she engaged in protected activity. Unlike Texas law, which requires the employee to explicitly frame the accommodation request as a complaint of discrimination to be protected, the ADA provides broader protection. In this case, Plaintiff's accommodation requests and subsequent internal complaints clearly meet the threshold for protected activity under federal law. The adverse actions that followed—especially the decision to terminate Plaintiff shortly after she responded to a disciplinary notice rooted in fabricated allegations—were actions that would dissuade a reasonable person from exercising her rights under the ADA.

68. The timing and intensity of Defendant's actions support a strong inference of causation. Texas courts, although interpreting retaliation claims under the TCHRA more narrowly, regularly rely on federal precedent and have recognized the ADA's broader standard when analyzing materially adverse actions. See *Tex. DOT v. Lara*, 625 S.W.3d 46; *Dallas Cnty. Hosp. Dist. v. Kowalski*, 703 S.W.3d 69. Defendant's conduct—including denying her access to internal systems immediately after issuing the Disciplinary Action Notice, and claiming falsely that she had failed to respond—further evidences its intent to silence Plaintiff's advocacy and punish her for asserting her rights.

69. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff suffered significant harm, including lost wages, loss of employment benefits, reputational damage, and severe emotional distress. She now seeks all remedies available under the ADA and the TCHRA, including but not limited to compensatory damages, punitive damages, equitable relief, and attorney's fees and costs.

**COUNT 7 – Retaliation in Violation of the Age Discrimination in Employment Act (ADEA)**

70. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Plaintiff incorporates by reference all preceding paragraphs of this Petition. Defendant Texas Department of Family and Protective Services (DFPS) violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(d), by unlawfully retaliating against Plaintiff Samotta Wiggins for engaging in protected activity related to age discrimination. The ADEA prohibits employers from taking adverse employment actions against individuals who oppose unlawful age-based employment practices or who file charges, assist, or otherwise participate in proceedings under the Act. See *United Indep. Sch. Dist. v. Mayers*, 665 S.W.3d 775.

72. At the time of the events in question, Plaintiff was over the age of 40 and, therefore, within the class protected by the ADEA. During her tenure, she repeatedly expressed concern over differential treatment she experienced based on her age, including comments by supervisors that referenced her aging status, such as, "you're not getting any younger," and comparisons to other younger employees. She also engaged in protected activity by opposing such discriminatory treatment and raising concerns internally about the way she was being targeted and excluded from standard procedures—such as the failure to hold her monthly performance reviews, which were regularly afforded to her younger colleagues.

73. Following these protected expressions of concern, Defendant engaged in a series of adverse employment actions against Plaintiff that ultimately resulted in her termination. These included stripping her of meaningful work duties, removing her access to internal systems, denying her the opportunity to respond to a disciplinary notice, and issuing a termination letter based on false premises. The temporal proximity and escalating nature of these adverse actions, all occurring after Plaintiff's protected conduct, establish a strong inference of causation.

74. To prevail on a retaliation claim under the ADEA, Plaintiff must show that (1) she engaged in protected activity; (2) she experienced a materially adverse employment action; and (3) there is a causal link between the two. Importantly, under the ADEA, the causation standard requires proof that the protected activity was the "but-for" cause of the adverse action—meaning that the adverse action would not have occurred absent the retaliation. The facts here meet this standard, as there is no legitimate, documented performance issue that independently justifies the treatment she received, and the sequence of retaliatory acts began shortly after she engaged in protected activity. See *§ 203A.35 Age Discrimination in Employment Act (ADEA)*.

75. The ADEA's anti-retaliation protections exist not only to remedy retaliatory conduct, but also to ensure that employees are not deterred from exercising their rights or participating in enforcement processes under the Act. The adverse actions imposed upon Plaintiff—including her termination—would clearly dissuade a reasonable employee from reporting age-based discrimination or asserting similar rights in the future, which is precisely what the statute was designed to prevent.

76. As a direct and proximate result of Defendant's unlawful retaliation under the ADEA, Plaintiff has sustained significant harm, including lost wages and benefits, emotional anguish, reputational damage, and diminished future earning capacity. She now seeks all relief available under the ADEA, including back pay, front pay, compensatory damages, and attorney's fees and costs.

**COUNT 8 – Retaliation in Violation of the Family and Medical Leave Act (FMLA)**

77. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Defendant Texas Department of Family and Protective Services (DFPS) retaliated against Plaintiff Samotta Wiggins in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2), by taking adverse employment actions against her for lawfully exercising

19

her FMLA rights. The FMLA entitles eligible employees to take leave for serious health conditions and prohibits employers from retaliating against employees who take such leave or seek to enforce their FMLA protections.

79. In mid-2022, Plaintiff qualified for and was granted extended FMLA leave for a documented medical condition. She resumed work in October 2022 under an approved intermittent FMLA status and attempted to reintegrate into her position while still managing the limitations of her condition. Shortly thereafter, she was subjected to escalating hostility, excessive scrutiny, and disparate treatment. Her supervisor began to question her leave eligibility, imposed new burdens not applied to others, and eventually conditioned the approval of time off on her accepting shifts that had been posted during her medical absence. These actions reflect a fundamental misunderstanding of and disregard for Plaintiff's FMLA rights and protections.

80. To establish a prima facie case of FMLA retaliation, a plaintiff must show: (1) that they engaged in protected activity under the FMLA, (2) that they suffered an adverse employment action, and (3) that there is a causal link between the protected activity and the adverse action. See *Horelica v. Fiserv Solutions, Inc.*, 123 S.W.3d 492. In Plaintiff's case, the adverse actions began shortly after she exercised her rights, including the denial of support, the initiation of groundless disciplinary proceedings, and her eventual termination, all of which followed her use of protected leave and ongoing efforts to seek accommodation.

81. While Defendant may attempt to articulate a neutral justification for Plaintiff's termination, such as alleged performance deficiencies, the evidence shows that these justifications were pretextual. Plaintiff was excluded from performance reviews, denied system access prior to responding to disciplinary notices, and held to standards not applied to her peers. Her termination occurred mere months after exercising her FMLA rights, and the fabricated disciplinary record built during that period lacked factual support. This sequence of events supports a finding that but for her use of FMLA leave, Plaintiff would not have been subjected

to such retaliatory treatment or terminated. See *Democratic Schs. Research, Inc. v. Rock*, 608 S.W.3d 290.

82. Moreover, while uniformly applied policies may protect employers from liability, Defendant's inconsistent and discretionary application of its internal policies further supports the claim of unlawful retaliation. In Plaintiff's case, no such uniformity existed. Her treatment diverged significantly from how other employees were handled under similar circumstances, and this selective enforcement further reinforces the inference of retaliation. As held in *Tex. Dep't of Family & Protective Servs. v. Parra*, 503 S.W.3d 646, temporal proximity alone may not suffice—but here, it is accompanied by substantial evidence of differential treatment, exclusion, manipulation, and hostility.

83. As a direct result of Defendant's unlawful retaliation, Plaintiff suffered damages including lost wages and employment benefits, emotional distress, damage to her professional reputation, and ongoing difficulty securing comparable employment. She now seeks all remedies available under the FMLA, including back pay, front pay, liquidated damages, equitable relief, and reasonable attorneys' fees and costs.

**COUNT 9 – Retaliation in Violation of the Family and Medical Leave Act (FMLA)**

84. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

85. Defendant Texas Department of Family and Protective Services (DFPS) violated Section 21.055 of the Texas Labor Code, commonly known as the Texas Commission on Human Rights Act (TCHRA), by retaliating against Plaintiff Samotta Wiggins for engaging in multiple forms of protected activity. The TCHRA prohibits employers from taking adverse employment actions against employees who oppose discriminatory practices, file complaints, or participate in investigations or proceedings related to discrimination. See *Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163.

86. Plaintiff engaged in statutorily protected activity when she submitted multiple internal reports concerning discrimination and unethical conduct related to her race, age, and disability. She also formally requested reasonable accommodations for her medical condition and reported concerns to the Civil Rights Division of the Texas Health and Human Services Commission (HHSC). Rather than address these complaints in good faith, Defendant escalated its retaliatory conduct. Within weeks of her protected activity, Plaintiff was stripped of her caseload, denied access to standard supervisory procedures, subjected to increased scrutiny, and eventually issued a false and retaliatory write-up that served as a basis for her termination.

87. To establish a prima facie case of retaliation under the TCHRA, a plaintiff must show that (1) they engaged in a protected activity, (2) they suffered a materially adverse employment action, and (3) there exists a causal link between the two. See *Lucan v. HSS Sys., L.L.C.*, 439 S.W.3d 606. The causal connection need not prove that retaliation was the sole reason for the adverse action—only that the protected activity was a "but for" cause of the employer's decision. See *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421.

88. In Plaintiff's case, the temporal proximity between her protected conduct and the adverse employment decisions—coupled with the targeted nature of the treatment she endured—clearly supports a causal link. DFPS not only failed to respond appropriately to her internal complaints but affirmatively punished her for asserting her rights. This pattern of retaliation cannot be dismissed as coincidental or based on legitimate performance concerns, especially in light of Plaintiff's consistent history of positive evaluations and exemplary performance.

89. Texas courts apply the McDonnell Douglas burden-shifting framework in retaliation claims where direct evidence is lacking. Once the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. If such a reason is offered, the burden then shifts back to the employee to demonstrate that the stated reason is merely a pretext for retaliation. See *Esparza v. Univ. of Tex. at El Paso*, 677

S.W.3d 115. Here, Plaintiff can show pretext through documentary evidence, inconsistencies in the disciplinary process, and discriminatory deviations from standard procedures—all of which point to retaliation as the true motive for her termination.

90. Importantly, to succeed on a retaliation claim, a plaintiff does not need to prevail on the underlying discrimination claim. It is sufficient to demonstrate that the plaintiff held a good-faith, reasonable belief that the employer's conduct was unlawful and that she was punished for speaking out. See *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755. Plaintiff's belief that she was being discriminated against based on her race, age, and disability was entirely reasonable and well-supported by both her lived experience and comparative treatment in the workplace.

91. As a direct result of Defendant's retaliation in violation of the TCHRA, Plaintiff has suffered serious and ongoing damages, including lost wages and benefits, emotional pain, reputational harm, and loss of future employment opportunities. She seeks all remedies available under the TCHRA, including compensatory damages, back pay, front pay, equitable relief, and attorney's fees and costs.

**COUNT 10 – Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act (TCHRA)**

92. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

93. Defendant Texas Department of Family and Protective Services (DFPS) subjected Plaintiff Samotta Wiggins to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code § 21.001 et seq. Under both statutes, it is unlawful for an employer to permit severe or pervasive conduct based on a protected characteristic—such as race, age, or disability—that alters the conditions of employment and creates an abusive or intimidating

23

work environment. See *Tex. Dep't of Family & Protective Servs. v. Whitman*, 530 S.W.3d 703;

*Harris Cnty. Hosp. Dist. v. Parker*, 484 S.W.3d 182.

94. Throughout her employment, and particularly after she began engaging in protected activities, Plaintiff was subjected to persistent and unwelcome treatment that was motivated by her race, age, and disability, and which far exceeded what any reasonable employee should be expected to endure. She was repeatedly excluded from standard procedures such as monthly performance evaluations, denied accommodations for her disability, stripped of her caseload without explanation, and subjected to invasive surveillance and micromanagement. Supervisors made comments referencing her age, suggesting she was "not getting any younger," and multiple coworkers confirmed their awareness of her FMLA status and the agency's targeting of her role—facts which should have remained confidential.

95. The hostility escalated after Plaintiff reported discriminatory and unethical conduct to HR and HHSC. Instead of addressing these concerns, DFPS retaliated by manipulating her assignments, altering her timesheets, and issuing a false disciplinary write-up based on fabricated allegations. Despite her history of strong performance and consistent evaluations, Plaintiff was singled out, isolated, and ultimately terminated based on a pretext. The conduct she endured was not merely unpleasant—it was systemic, targeted, and designed to marginalize and remove her from the workplace.

96. To establish a hostile work environment claim under Title VII or the TCHRA, a plaintiff must show that (1) she was subjected to unwelcome harassment, (2) the harassment was based on a protected characteristic, (3) the conduct was severe or pervasive enough to create an abusive working environment, and (4) there is a basis for holding the employer liable. See *Brothers v. Gilbert*, 950 S.W.2d 213; *City of El Paso v. Marquez*, 380 S.W.3d 335. In this case, Plaintiff satisfies all elements. The conduct was unwelcome and rooted in discriminatory motives, the

actions were both severe and pervasive, and supervisors and managers were directly involved—establishing DFPS's liability.

97. Texas courts interpret the TCHRA consistent with federal Title VII standards. See *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276. The totality of the circumstances—including the frequency, duration, retaliatory nature, and impact on Plaintiff's emotional well-being and ability to work—demonstrate that the environment at DFPS was abusive and objectively intolerable.

98. As a direct and proximate result of the hostile work environment, Plaintiff has suffered substantial and ongoing damages, including emotional anguish, mental distress, reputational harm, and loss of income. She now seeks all damages and equitable relief available under Title VII and the TCHRA, including compensatory damages, injunctive relief, and attorney's fees and costs.

## COUNT 11 – Wrongful Termination in Violation of Texas Law and Public Policy

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

100. Under Texas law, employment is generally at-will, meaning an employer may terminate an employee for any reason or no reason at all, so long as the termination does not violate public policy or a statutory protection. However, Plaintiff Samotta Wiggins was wrongfully terminated in violation of both public policy and specific statutory protections that apply in her case. One recognized exception to the at-will doctrine is the Sabine Pilot exception, which prohibits employers from terminating employees solely for refusing to perform an illegal act. See *Allen v. Powell*, 989 S.W.2d 776; *Physio GP, Inc. v. Naifeh*, 306 S.W.3d 886.

101. During the course of her employment with Defendant Texas Department of Family and Protective Services (DFPS), Plaintiff was instructed to engage in unethical and potentially unlawful conduct—including falsifying government records related to the placement and

welfare of a child in state care. Plaintiff refused to comply with this directive, expressly communicating that such actions were unethical, conflicted with DFPS policy, and potentially illegal. Shortly after her refusal, she was subjected to a retaliatory campaign that culminated in her termination. This termination was not only unjustified but also occurred solely because she refused to engage in illegal conduct, thus satisfying the elements of a claim under the Sabine Pilot doctrine.

102.    Additionally, Texas law provides statutory protection against retaliatory termination in contexts directly relevant to Plaintiff's employment. Under Texas Family Code § 261.110, state employees such as Plaintiff are protected from retaliation for reporting suspected abuse, neglect, or exploitation of children. Plaintiff made such reports in good faith, both internally and to the Civil Rights Division of HHSC, concerning the mishandling of a child welfare case by DFPS supervisors and field staff. Rather than investigate or remediate the concerns raised, Defendant escalated its retaliation, ultimately terminating Plaintiff on the basis of a fabricated and pretextual disciplinary history. This conduct constitutes a direct violation of § 261.110 and represents a further basis for wrongful termination under Texas statutory law.

103.    The causal connection between Plaintiff's protected conduct and her termination is clear. Within weeks of submitting complaints and refusing to falsify documentation, Plaintiff's workload was removed, her system access was suspended, and she was issued a Disciplinary Action Notice based on manufactured claims. She was terminated mere days after submitting her response to the notice. These retaliatory acts—motivated by her refusal to break the law and her exercise of rights under statutory protections—strip Defendant of the shield typically provided by Texas's at-will employment doctrine.

104.    Moreover, Defendant's actions were carried out with conscious disregard for Plaintiff's legal rights and with malicious intent. This includes denying her access to essential employment systems prior to affording her a fair opportunity to respond to accusations,

26

spreading falsehoods about her conduct within the agency, and interfering with her ability to secure unemployment and seek future employment. Under Texas law, punitive damages may be awarded in Sabine Pilot cases where the employer's conduct demonstrates malice or reckless indifference to the employee's rights, which is amply demonstrated by Defendant's pattern of behavior in this case. See *Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330.

105.    As a direct and proximate result of Defendant's unlawful termination, Plaintiff has suffered significant and ongoing harm, including lost wages, lost employment benefits, mental anguish, reputational damage, and diminished future employment prospects. Plaintiff seeks all available remedies under Texas law, including compensatory and punitive damages, reinstatement or front pay, and attorneys' fees and costs.

## COUNT 12 – Wrongful Termination in Violation of the Americans with Disabilities Act (ADA)

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

107.    Defendant Texas Department of Family and Protective Services (DFPS) wrongfully terminated Plaintiff Samotta Wiggins in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Texas Labor Code §§ 21.051 and 21.128, by discharging her because of her disability and failing to provide reasonable accommodation. Under the ADA and its Texas counterpart, it is unlawful for an employer to discharge a qualified individual because of a disability or to refuse reasonable accommodations unless such accommodations would cause undue hardship. See *Deville v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 634 S.W.3d 324; *Tex. DOT v. Lara*, 625 S.W.3d 46.

108.    At all relevant times, Plaintiff was a qualified individual with a disability as defined under the ADA and the Texas Labor Code. She had a documented medical condition that substantially limited one or more major life activities, and of which Defendant was aware.

27

Plaintiff formally requested accommodations in November 2022 and again in February 2023, through both written and verbal channels, and made consistent efforts to clarify her needs. These requests were ignored or denied without engaging in the interactive process required by law. Defendant made no good-faith effort to explore or offer any accommodation, and instead responded with punitive actions, including reassignment of duties, manipulation of time records, excessive monitoring, and, ultimately, termination.

109.    Plaintiff was fully capable of performing the essential functions of her position with or without reasonable accommodation. Her termination was not supported by any legitimate, documented performance concerns and occurred within months of her protected requests for medical leave and accommodation. These facts support a strong inference that her disability—and Defendant's refusal to accommodate it—were the motivating factors in her termination. Importantly, under *Deville*, Plaintiff is not required to prove that she was replaced by or treated less favorably than a non-disabled employee; rather, her strong history of performance, and the timing and nature of Defendant's actions, sufficiently establish the causal connection between her disability and her discharge.

110.    Moreover, Defendant's failure to provide any meaningful response to Plaintiff's repeated accommodation requests constitutes an independent violation of § 21.128 of the Texas Labor Code, which requires a good-faith effort to accommodate known disabilities. Instead of exploring flexible solutions or workload adjustments, Defendant used her medical condition and accommodation needs as a basis to label her as non-compliant and unfit for duty, laying the groundwork for her eventual termination.

111.    The termination itself was executed in a manner that compounded the discriminatory impact. Plaintiff was cut off from the agency's systems and denied an opportunity to respond to disciplinary allegations in real time, actions that reflected a disregard for her dignity and procedural fairness. While Texas law does not permit recovery for mere indignities, courts

recognize that the totality of conduct, including the context and cumulative impact, may support a wrongful termination claim grounded in disability discrimination. See *Richard Rosen, Inc. v. Mendivil*, 225 S.W.3d 181.

112.    As a direct and proximate result of Defendant's wrongful termination based on disability, Plaintiff has suffered lost wages, lost employment benefits, reputational harm, emotional distress, and significant disruption to her career and health. She now seeks all relief available under the ADA and the Texas Labor Code, including reinstatement or front pay, back pay, compensatory damages, equitable relief, and attorneys' fees and costs.

**COUNT 13 – Wrongful Termination in Violation of the Family and Medical Leave Act (FMLA)**

113.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

114.    Defendant Texas Department of Family and Protective Services (DFPS) wrongfully terminated Plaintiff Samotta Wiggins in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., and Section 661.912 of the Texas Government Code, which guarantees eligible employees up to 12 weeks of unpaid leave for qualifying medical conditions with job protection and continued access to health benefits. The FMLA prohibits employers from interfering with, restraining, or denying the exercise of FMLA rights, and from retaliating against employees who take or request protected leave.

115.    Plaintiff qualified for FMLA leave due to a serious medical condition and was approved for extended leave in July 2022, returning in October 2022 under an intermittent FMLA designation. Despite complying with all medical certification requirements and agency policy, DFPS treated her return with hostility, imposed unwarranted scrutiny, and ignored her status under FMLA. Her supervisor questioned her absences, attempted to force her into shift work

29

scheduled while she was on protected leave, and penalized her for requesting further time off for health-related needs.

116.    The FMLA provides that an employer may not terminate or discipline an employee because of the exercise of FMLA rights. In *Haynes v. City of Beaumont*, 35 S.W.3d 166, the court clarified that even where FMLA leave is granted, an employer may still be held liable for retaliating against or punishing the employee for having exercised those rights. Here, the hostility that began upon Plaintiff's return from leave escalated steadily, culminating in her wrongful termination in August 2023—less than one year after resuming work and while still managing a serious health condition under FMLA protections.

117.    Furthermore, the evidence suggests that Plaintiff was not terminated under any legitimate or uniformly enforced absence-control policy. On the contrary, the disciplinary actions leading to her dismissal were based on falsified accusations, altered records, and pretextual rationales. In *Tex. Dep't of Family & Protective Servs. v. Parra*, 503 S.W.3d 646, the court found that when employers inconsistently apply absence-control policies, such discrepancies can support a finding of retaliatory or discriminatory termination. Similarly, in *Cnty. of El Paso v. Flores*, 677 S.W.3d 31, the court held that termination during FMLA leave—especially when the employer is aware of the protections—may constitute a clear violation if not justified by lawful grounds.

118.    In Plaintiff's case, there is no credible evidence that her termination was based on objective or non-discriminatory reasons. She was an experienced, well-reviewed employee who had never received discipline until after her FMLA leave began. The temporal proximity between her leave, her requests for accommodation, and her termination further supports the conclusion that her protected activity under the FMLA was the but-for cause of her dismissal.

119.    As a direct and proximate result of Defendant's wrongful termination, Plaintiff has suffered extensive economic harm, emotional distress, and professional reputational damage. She seeks

30

all remedies available under the FMLA, including reinstatement (if appropriate), back pay, front pay, liquidated damages, and reasonable attorneys' fees and costs.

**COUNT 14 – Intentional Infliction of Emotional Distress (IIED) Under Texas Common Law**

120.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

121.    Plaintiff Samotta Wiggins asserts a claim for Intentional Infliction of Emotional Distress (IIED) under Texas common law. IIED is a narrowly applied tort, recognized by Texas courts only in exceptional cases where the defendant's conduct is so extreme and outrageous as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society. See *Doe v. Cruz*, 683 S.W.3d 475; *Tiller v. McLure*, 121 S.W.3d 709.

122.    Throughout her employment with Texas Department of Family and Protective Services (DFPS), Plaintiff was subjected to a pattern of conduct that—when viewed in totality—rises to this extreme and outrageous standard. Supervisors knowingly ignored her requests for reasonable accommodation for a documented disability, pressured her to falsify case records involving the welfare of children, stripped her of her workload without explanation, and falsely accused her of misconduct in retaliation for filing internal complaints. Plaintiff was further humiliated by being locked out of agency systems, excluded from performance evaluations, and terminated under false pretenses—all while she was recovering from a serious medical condition and under the protection of FMLA.

123.    The conduct was not merely insensitive or bureaucratically negligent—it was deliberate, systematic, and executed with reckless disregard for Plaintiff's mental and emotional well-being. Defendant's agents weaponized workplace procedures to isolate and punish Plaintiff for exercising legally protected rights, including the right to report unethical practices, seek medical leave, and request accommodations. The timing and intensity of the retaliation,

combined with the abandonment of standard internal protections and procedures, demonstrate an intent to break Plaintiff down emotionally and force her out of her position.

124. As a result of this conduct, Plaintiff suffered severe emotional distress manifesting in anxiety, loss of sleep, depression, and significant psychological trauma. These symptoms were not fleeting or trivial but deep and prolonged, requiring therapeutic intervention and continuing to affect her ability to maintain stable employment and recover professionally.

125. While Plaintiff has asserted claims under statutes such as the ADA, FMLA, and the Texas Labor Code, this cause of action is pleaded in the alternative for the express purpose of preserving a remedy should the Court find that no other statutory cause of action fully captures the gravity of the harm inflicted. Texas courts have acknowledged that IIED serves as a "gap-filler" tort, available only where no other legal theory provides relief for the same underlying conduct. See *Whitelock v. Stewart*, 661 S.W.3d 583; *Young v. Krantz*, 434 S.W.3d 335. Plaintiff respectfully contends that, to the extent the factual basis for her claims is not fully remedied through other causes of action, the outrageous conduct described herein warrants relief under the doctrine of IIED.

126. Plaintiff therefore seeks actual damages for emotional pain and suffering, as well as exemplary damages where permitted, to punish and deter such egregious abuse of authority in the future.

**COUNT 15– Color Discrimination in Violation of the Texas Labor Code**

**Tex. Lab. Code § 21.051(1)**

127. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

128. In addition to race-based discrimination, Plaintiff was subjected to unlawful treatment based on color in violation of Texas Labor Code § 21.051. Color discrimination refers to

treating someone unfavorably because of skin shade or tone and is distinct from racial classification. Throughout her employment, Plaintiff, a dark-skinned Black woman, was subjected to more intense scrutiny, hostility, and exclusion than lighter-skinned employees of similar racial identity and position.

129. Supervisors engaged in acts of exclusion and differential treatment that disproportionately impacted Plaintiff as compared to lighter-skinned colleagues. This included disparate enforcement of disciplinary policy, being held to a stricter performance standard, and exclusion from team dynamics. The actions were motivated, at least in part, by impermissible considerations of color and therefore constitute a violation of the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code § 21.051(1).

130. As a direct and proximate result, Plaintiff suffered harm including emotional distress, reputational injury, and economic losses. Plaintiff seeks all damages and relief available under Texas law.

**COUNT 16 – National Origin Discrimination in Violation of the Texas Labor Code**

**Tex. Lab. Code § 21.051(1)**

131. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

132. To the extent any adverse actions taken against Plaintiff were based on assumptions, stereotypes, or bias relating to her national origin, such conduct violates Texas Labor Code § 21.051(1). Plaintiff was subjected to differential treatment regarding communication style, tone, and interpersonal demeanor—areas where supervisors imposed culturally biased expectations or penalized Plaintiff for behavior that would not have warranted discipline for non-minority employees.

33

133. Disparaging comments and implicit cultural bias within the workplace policies and enforcement constitute unlawful employment practices under the TCHRA. Plaintiff's speech patterns and workplace communication were unfairly scrutinized and used as pretext for disciplinary action, revealing discriminatory bias rooted in her cultural and ethnic identity. These actions are prohibited under § 21.051(1) and entitle Plaintiff to all available remedies under Chapter 21.

## COUNT 17 – Sex Discrimination in Violation of the Texas Labor Code

### Tex. Lab. Code § 21.051(1)

134. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

135. To the extent that any adverse employment actions were based, in whole or in part, on Plaintiff's sex, Defendant's conduct violates Texas Labor Code § 21.051(1). Plaintiff was subjected to workplace demands, performance expectations, and disciplinary actions that differed significantly from her male counterparts. She was assigned higher caseload burdens, penalized for interpersonal dynamics that were tolerated or even encouraged in male employees, and subjected to gendered scrutiny regarding her tone and assertiveness.

136. Defendant's failure to treat Plaintiff equitably in comparison to similarly situated male employees constitutes sex-based disparate treatment and supports a claim under the TCHRA. Plaintiff is entitled to all remedies permitted under Texas law, including compensatory damages, equitable relief, and attorney's fees.

## COUNT 18 – Failure to Accommodate Under Texas Labor Code § 21.128

### (Disability)

137. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

138. Pursuant to Tex. Lab. Code § 21.128, Defendant was required to provide a reasonable accommodation to Plaintiff as a qualified individual with a disability. Defendant's failure to initiate or meaningfully participate in the interactive process, despite Plaintiff's multiple documented and verbal requests, constitutes a violation of the Texas Labor Code.

139. Rather than make individualized assessments or explore adjustments, Defendant ignored Plaintiff's disability and responded by increasing workload pressure, targeting her for discipline, and eventually terminating her employment. Defendant never articulated that any requested accommodation would pose an undue hardship, further proving the unlawful nature of the denial.

140. Under Texas law, failure to accommodate is independently actionable under § 21.128 and entitles Plaintiff to damages, injunctive relief, and costs.

**COUNT 19 – Retaliation for Opposing Discrimination**

**Tex. Lab. Code § 21.055(1)**

141. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

142. Plaintiff engaged in protected activity under the Texas Labor Code by internally opposing discriminatory conduct and filing complaints regarding unlawful treatment based on race, sex, disability, age, and other protected characteristics. As a direct result of her opposition to discriminatory practices, Defendant subjected her to adverse employment actions including but not limited to increased disciplinary write-ups, heightened scrutiny, denial of promotions, demotion or job reassignment, and ultimately termination.

143. Defendant's conduct constitutes unlawful retaliation in violation of Texas Labor Code § 21.055(1). Plaintiff is entitled to all remedies authorized by law including reinstatement, compensatory damages, and attorney's fees.

## COUNT 20 – Retaliation for Participating in EEOC or TWC Proceedings

### Tex. Lab. Code § 21.055(2)–(3)

144. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

145. In addition to opposing unlawful discrimination internally, Plaintiff also participated in proceedings and investigations before the Texas Workforce Commission – Civil Rights Division (TWC-CRD) and/or the Equal Employment Opportunity Commission (EEOC). This included providing information in support of formal complaints, cooperating with investigators, and preserving evidence relevant to claims.

146. Subsequently, Defendant engaged in retaliatory acts specifically targeted at punishing Plaintiff for participating in the TWC/EEOC process, in violation of Texas Labor Code § 21.055(2)–(3). Such retaliation included, but was not limited to, hostile behavior from management, exclusion from decision-making, performance-based harassment, and adverse employment decisions. Plaintiff is entitled to all legal remedies provided under Chapter 21.

## COUNT 21 – Age Discrimination in Violation of Texas Labor Code

### Tex. Lab. Code § 21.051(1), § 21.101

147. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

148. Plaintiff, over the age of forty (40), was subjected to adverse employment actions motivated in whole or in part by age-based bias, in violation of Texas Labor Code § 21.051 and § 21.101. Defendant failed to promote Plaintiff, subjected her to heightened performance scrutiny, favored younger employees with less experience, and ultimately terminated Plaintiff under pretextual circumstances while retaining or rehiring younger, less qualified individuals.

149. This pattern of conduct was unlawful age discrimination under Chapter 21 of the Texas Labor Code. Plaintiff seeks all available legal and equitable remedies, including damages for lost wages, benefits, and emotional harm.

## COUNT 22: VIOLATION OF 42 U.S.C. § 1983 – EQUAL PROTECTION CLAUSE (RACE, DISABILITY, AGE)

150. Plaintiff re-alleges and incorporates all preceding paragraphs. At all relevant times, Defendants acted under color of state law. Plaintiff had a clearly established right under the Fourteenth Amendment to the United States Constitution to be free from discrimination on the basis of race, disability, and age.

151. Defendants, including supervisory employees at the Department of Family and Protective Services (DFPS), subjected Plaintiff to intentional discrimination and disparate treatment based on race, age, and disability. These acts include, but are not limited to: (a) racially motivated exclusion from assignments and professional development; (b) retaliatory investigations and disciplinary action following protected activity; (c) refusal to accommodate a qualifying disability; and (d) demotion or termination without valid justification.

152. These acts were taken with deliberate indifference and were part of a broader pattern of discriminatory conduct by DFPS.

153. As a direct and proximate result of Defendants' conduct, Plaintiff suffered substantial harm.

## COUNT 23 - VIOLATION OF 42 U.S.C. § 1981 (via 42 U.S.C. § 1983) – RACIAL DISCRIMINATION IN EMPLOYMENT
### **Against All Defendants**

154. Plaintiff re-alleges and incorporates all preceding paragraphs. Plaintiff, as an African American employee, is entitled to make and enforce contracts free from racial discrimination pursuant to 42 U.S.C. § 1981.

155. Defendants interfered with Plaintiff's rights under § 1981 by denying promotions, equal pay, and fair treatment due to Plaintiff's race. Plaintiff was retaliated against for engaging in protected activity and was ultimately constructively discharged.

156. Under *Jett v. Dallas ISD*, 491 U.S. 701 (1989), Plaintiff brings this claim via 42 U.S.C. § 1983.

## COUNT 24 - VIOLATION OF THE REHABILITATION ACT OF 1973 § 504 (29 U.S.C. § 794) **Against DFPS**

157. Plaintiff re-alleges and incorporates all preceding paragraphs.

158. Defendant DFPS is a recipient of federal financial assistance and is prohibited under Section 504 of the Rehabilitation Act from discriminating against employees on the basis of disability.

159. Despite being qualified to perform the essential functions of her job, Plaintiff was denied reasonable accommodations and subjected to adverse employment actions, including demotion and constructive discharge, due to her disability.

160. These acts constitute unlawful disability discrimination under Section 504.

## COUNT 25 - VIOLATION OF THE TEXAS WHISTLEBLOWER ACT (Tex. Gov't Code § 554.002) **Against DFPS**

161. Plaintiff re-alleges and incorporates all preceding paragraphs.

162. Plaintiff reported violations of law to an appropriate law enforcement authority, including falsification of public records and misuse of public resources.

163. In retaliation for her good faith reports, Defendant DFPS took adverse employment actions including unwarranted investigations, performance reviews, and constructive termination.

164. Defendant's conduct violates the Texas Whistleblower Act, entitling Plaintiff to injunctive relief, damages, attorney's fees, and all other available remedies under law.

## VIII.   DAMAGES

165. Plaintiff hereby adopts by reference each and every paragraph of the Facts and Causes of Action stated in this Original Petition as if fully and completely set forth herein.

166. As a direct and proximate result of Defendant's unlawful, retaliatory, and discriminatory conduct, Plaintiff Samotta Wiggins has suffered severe and ongoing harm. Defendant Texas Department of Family and Protective Services (DFPS) systematically targeted Plaintiff for asserting her civil rights, including her rights under the ADA, FMLA, and Texas Labor Code. As a result of this egregious conduct, Plaintiff lost her employment, her source of

income, her health benefits, and her professional reputation—injuries that have affected every area of her life.

167. Plaintiff seeks to recover economic damages for lost wages, past and future income, employment benefits, and out-of-pocket costs directly resulting from her unlawful termination. These include unreimbursed travel expenses and unpaid overtime that were withheld in retaliation for protected activity. Plaintiff was left without stable income for months, forced to rely on unemployment assistance and external aid to cover basic living expenses, and continues to experience diminished earning capacity as a result of the damage to her professional record.

168. In addition to economic harm, Plaintiff seeks compensatory damages for the emotional distress, anxiety, depression, and psychological trauma she has endured. Defendant's conduct—falsifying disciplinary records, isolating Plaintiff, stripping her of her duties, denying her reasonable accommodations, and ultimately terminating her under false pretenses—has caused profound emotional suffering. The hostile work environment and retaliatory acts inflicted upon Plaintiff not only disrupted her livelihood but also undermined her dignity and sense of self-worth. She continues to experience lingering psychological and emotional effects, including insomnia, panic attacks, and loss of trust in professional relationships.

169. Plaintiff further seeks exemplary damages based on Defendant's knowing and malicious disregard for her rights. The record shows that DFPS acted intentionally and with reckless indifference to Plaintiff's health, safety, and legal protections. Defendant repeatedly ignored formal complaints, manipulated internal processes to justify retaliatory discipline, and terminated Plaintiff in direct response to her refusal to engage in unethical conduct. These actions were not merely negligent—they reflect a pattern of abuse and official misconduct that must be deterred through punitive measures. Under Texas law, such conduct warrants

the imposition of exemplary damages to punish the wrongdoing and discourage similar violations in the future.

170. Plaintiff also seeks all other forms of relief to which she is legally entitled, including but not limited to attorneys' fees, expert witness fees, costs of court, and pre- and post-judgment interest as provided by law. These remedies are essential to restore Plaintiff, to affirm the rule of law, and to ensure that public agencies such as DFPS are held accountable for conduct that violates the rights of those they employ.

171. All damages sought herein are within the jurisdictional limits of this Court. Plaintiff respectfully prays that judgment be entered in her favor for the full amount of actual, compensatory, and exemplary damages to which she is entitled, as supported by the evidence presented at trial.

## IX.    ATTORNEYS' FEES AND COSTS

172. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

173. Plaintiff has retained the services of undersigned counsel to prosecute her claims, including but not limited to claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), the Family and Medical Leave Act (FMLA), and the Texas Commission on Human Rights Act (TCHRA).

174. Pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), and Texas Labor Code § 21.259, Plaintiff is entitled to recover reasonable attorney's fees, including reasonable expert witness fees, court costs, and other litigation-related expenses incurred in pursuing these claims.

175. Plaintiff respectfully seeks all such fees and costs, as well as any other relief deemed just and proper by the Court.

## X.    INJUNCTIVE AND DECLARATORY RELIEF

176. Plaintiff hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

177. Plaintiff respectfully requests that this Court issue orders providing injunctive and declaratory relief, including but not limited to:

    a.  Prohibiting Defendant Texas Department of Family and Protective Services, its agents, officers, supervisors, and employees from engaging in further acts of discrimination, harassment, and retaliation on the basis of disability, race, age, or protected medical leave;

    b.  Requiring Defendant to revise, implement, and enforce comprehensive anti-discrimination and anti-retaliation policies that are consistent with federal and state laws, including mandatory training for all management and supervisory personnel;

    c.  Mandating that Defendant establish a reporting and oversight mechanism, including periodic compliance reports to this Court, to ensure that future violations of the ADA, FMLA, ADEA, Title VII, and Texas Labor Code Chapter 21 are identified, addressed, and prevented;

    d.  Ordering Defendant to expunge from Plaintiff's personnel file any false or retaliatory disciplinary notices, and to correct the record to reflect that Plaintiff was wrongfully terminated in violation of her civil rights;

    e.  Declaring that Defendant violated Plaintiff's rights under Title VII, the ADA, the ADEA, the FMLA, and the TCHRA, and that the agency's conduct constituted unlawful retaliation, discrimination, hostile work environment, interference with protected leave, and wrongful termination;

42

f.  Awarding Plaintiff all court costs and litigation expenses associated with seeking equitable relief; and

g.  Granting any such additional or alternative equitable relief as this Court deems necessary and proper to remedy the harms suffered by Plaintiff and to prevent recurrence of similar unlawful conduct in the future.

## XI.  DEMAND FOR PRESERVATION OF EVIDENCE TO DEFENDANT DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES OF TEXAS ("DFPS")

178. Plaintiff hereby requests and demands that Defendant preserve and maintain all evidence pertaining to any claim or defense related to the facts and allegations making the basis of this lawsuit, or damages resulting therefrom.  Plaintiff's Demand letter to Preservation of Evidence to Defendants is attached to this Petition as Exhibit A.  The letter is to provide notice that Defendants must immediately take the necessary steps to issue a litigation hold and preserve all "electronically stored information" ("ESI") and other documents, on whatever storage media, device or location, in their possession or control (including third parties) that contain potential ESI relating to the claims and defenses contained in this Petition, and that Defendants avoid spoliation of this ESI.  The letter also includes a demand for Defendants to suspend all document retention or destruction policies, including but not limited to backup, restoration, deletion, destruction, and tape recycling.

## XII.  NOTICE PURSUANT TO RULE 193.7

179. Plaintiff provides notice to Defendant pursuant to Rule 193.7 of the Texas Rules of Civil Procedure that Plaintiff may utilize as evidence during the trial of this lawsuit all documents exchanged by the parties in written discovery in this case.

## XIII.  JURY DEMAND

Plaintiff demands a trial by jury.

## XIV.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Samotta Wiggins respectfully requests that Defendant Texas Department of Family and Protective Services be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment in favor of Plaintiff and award the following relief:

A. Actual and economic damages, including but not limited to back pay, front pay, loss of benefits, unreimbursed travel and overtime wages, and all other economic losses sustained as a result of Defendant's unlawful conduct;

B. Compensatory damages for emotional distress, mental anguish, reputational harm, loss of enjoyment of life, and other non-economic injuries resulting from the discrimination, retaliation, and wrongful termination Plaintiff suffered;

C. Exemplary and punitive damages to punish and deter Defendant's willful, malicious, or reckless disregard for Plaintiff's civil rights and to discourage similar misconduct in the future;

D. Reasonable attorneys' fees, expert witness fees, court costs, and all litigation expenses incurred in the investigation, preparation, and prosecution of this action, as authorized by federal and Texas law;

E. Injunctive and declaratory relief, including but not limited to an order:

a. Declaring that Defendant violated Plaintiff's rights under Title VII, the ADA, the ADEA, the FMLA, and the Texas Commission on Human Rights Act (TCHRA);

b. Requiring Defendant to implement and enforce non-discrimination, accommodation, and anti-retaliation policies consistent with federal and state law;

c. Mandating Defendant to provide training to supervisors and human resources staff regarding compliance with civil rights protections;

d. Ordering Defendant to expunge any and all false disciplinary actions from Plaintiff's employment record;

e. Directing Defendant to report to the Court regarding compliance with any final order issued in this case;

f. Awarding such further equitable relief as the Court may deem just, proper, and necessary to prevent future violations;

F. All costs of court;

G. Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

H. All other legal or equitable relief to which Plaintiff may be justly entitled, at law or in equity.

Plaintiff further prays for such other and further relief, general or special, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

/s/ John L. Pittman III
John L. Pittman III, Esq., LLM[2]
Texas State Bar No. 24127922
New York State Bar No. 5880646
California State Bar No. PL482988
District of Columbia Bar No. 1742578
**JOHN L. PITTMAN III | ATTORNEY AT LAW, APC**
925 B Street, Suite 604, San Diego, CA 92101
Direct: 760-575-4040 - Fax: 877-575-5264
jlpittmaniii@jp3law.com
*COUNSEL FOR PLAINTIFF SAMOTTA WIGGINS*